Henry W. Lengyel, J.
This is a claim for the appropriation of claimants’ land pursuant to section 30 of the Highway Law, which proceeding is described as F.A.I. 502-5-1.3, 1.4, and 1.5 (87), Interstate Route 502, Clinton County, Map No. 23, Parcels Nos. 31, 32, 33; Map No. 36, Parcel No. 129; and Map No. 96, Parcel No. 143. The claim was filed with the Clerk of the Court of Claims on May 6, 1963 and the Attorney-General on May 1, 1963 and it has not been assigned.
Before the appropriation subject property consisted of 200± acres of land improved with four houses, -a garage and several *797 small outbuildings. It was located on Route 22 about % mile north of the Village of Keeseville.
The land was generally level except for the portion along each side of a creek which flowed across the northerly section of the property. There were about 2,300 feet of frontage, 200 feet deep on the east side of Route 22 and about 1,300 feet of frontage, 200 feet deep on the west side of Route 22. The east frontage contained 700± feet of frontage being used in developed residential lots; 750± feet of frontage with a highest and best use of potential rural residential development; and 850± feet of agricultural land. The west frontage was agricultural land. The land which was suitable for agricultural purposes was divided into about 29.9± acres of tillable land, 15 acres of pasture land and 148.5 acres of wooded land containing mainly scrub pines but with some pulpwood and saw log size trees.
The highest and best use of subject property before and after the appropriation was residential of the developed land, potential residential strip development of part of the road frontage, and agricultural of the remaining land.
The subject proceeding appropriated approximately 23.476 acres of claimants’ property and applied a temporary easement to 0.497± acre of said property.
We take direct issue with the appraisal technique employed by the State’s appraiser in valuing the road frontage. Said appraiser advised the court that the highest and best use of 3,600± feet of road frontage was potential residential strip development. We agree that such was the highest and best use for part of said frontage. The appraiser took the position that the claimants OAvned an excessive amount of road frontage which Avould not, in his opinion, all be sold until 20 years after the appropriation. He, therefore, reasoned that the present value of this road frontage should be reduced to reflect the long holding period. By an application of the Lrwood Compound Method, he arrived at a reduction in value from $1,400 an acre to $140 an acre; or, from $7 a front foot to $0.70 a front foot. He advised the court that he established his reduction in value by use of Table III as shown on page 446 of “ The Appraisal of Real Estate ” (3d ed.), Exhibit “ D ”, and by an application of his judgment. However, he did not demonstrate to the court hoAv he applied his judgment and he could not explain hoAv he used Table III aforesaid. We have endeavored to use the table that this appraiser claimed he used. On a 20-year basis and assuming a 6% rate of return which we consider reasonable (the appraiser did not testify to his rate of return), we arrive at a reduction to $436.52 an acre; or, *798 $2.18 a front foot. This is such a variance from the appraisers testimony, we are led to the conclusion that he either did not use said table; or, if he did, that he incorrectly advised the court as to what he did; or, that he did not understand what he did. In any event he applied $140 an acre to all the useable road frontage which included the frontage of the improved lots upon which were situated the residence buildings involved in this claim. We consider an evaluation of an improved lot at the same figure as raw land to be totally unrealistic.
However, more important than the aforesaid mechanical problems and errors in judgment is our basic disagreement with the appraisal technique of using the Inwood Method to evaluate heterogeneous raw land. The Inwood Method is a discounting process to determine the present worth of an income stream. (“The Appraisal of Real Estate”, 3d ed., p. 303.) As was stated in Midcourt Bldrs. Corp. v. State of New York (24 A D 2d 532, 533): “ The Inwood Premise contemplates recapturing invested capital and the return on the investment to be made in a series of annual payments over a designated term. (Friedman, Encyclopedia of Real Estate Appraising, p. 78.) It is most commonly used in determining the present worth of a leasehold or mortgage providing for periodic payments of principal and income over a specified term. (Casey, Real Estate Desk Book, p. T 42.) But here no leasehold had been appropriated but only raw land. On rare occasions the use of the Inwood Premise is proper in land appropriation cases. Thus, in the valuation of so-called wasting assets, such as unsold or unused cemetery property and timber upon lands having little or no value after removal at maturity of the crop of trees it may have limited use. (Cf. Diocese of Buffalo v. State of New York, 23 A D 2d 958.) (See, also, McMichael’s Appraising Manual [4th ed.], pp. 45-48.)
In the two examples used above, the land being valued had a homogeneous highest and best use. For example, the cemetery land, in question, if used to its highest and best use, could only be used for cemetery land. It is our opinion, and is the rule which we apply, that agricultural land which must be held for more than five years after the date of appropriation cannot be given a highest and best use of rural residential strip development. In the subject case and accepting the State’s time evaluation, which we do, it would take 20 years to dispose of all of this road frontage. Obviously, agricultural frontage land which must be held 20 years cannot be given a highest and best use of residential frontage. To do so would be to “ substitute for reality the mere hope of the owner that the property *799 might be used for some specific purpose (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 586.) To combine residential frontage with agricultural frontage and then to apply the Inwood Method to the resulting hybrid frontage creates an artificial and inequitable reduction in the value of the road frontage which has the more valuable highest and best use. To illustrate the absurdities which could result, assume the following hypothetical situation. Claimant “A” owned 3,600± feet of road frontage. In 1960 he sold his most northerly 200 feet of frontage to claimant “ B ” for $1,400. In 1961 the State of New York appropriated claimant “ B’s ” property as well as the contiguous 200± feet owned by claimant “A”. Assuming an arm’s length sale in 1960, “A” to “ B ”, no appraiser or court would quarrel with an award of $1,400 to claimant “ B ”. However, under the State’s theory in subject case, we would award claimant “A” only $0.70 a front foot, or $140 for his 200 feet and explain the difference by stating that claimant “A” had so much frontage that no one foot of it was worth very much.
Wo believe that the correct approach, in appraising property such as subject property, is for the appraiser to determine from the market how much of the road frontage fairly could be sold for residential strip development on or about the date of appropriation. That amount of frontage should receive the fair market dollar value as of that date. The remaining frontage should be valued as agricultural land on the date of appropriation. When the State appropriates part of said road frontage, it should pay the residential strip development price for that frontage which falls within that category and the agricultural price for the balance of the land taken which falls within that category. One might ask why it should be considered that that which the State appropriated was the highest priced land rather than the lowest priced land. Obviously, the claimant would not willingly sell road frontage for less than that which he might expect to obtain from a willing buyer in or about 1961. To find otherwise would be to destroy the illusion upon which condemnation fair market value is based, i.e., a willing buyer and a willing seller.
The claimants are awarded the sum of $16,369 for all damages direct and consequential and for the rent of the temporary easement, with interest thereon.